UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNA M. PATTON,

       Plaintiff,                          Civil Action No. 10-13314

v.                                     HON. JULIAN ABELE COOK
                                           U.S. District Judge
                                           HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Anna Patton brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On September 21, 2006, Plaintiff filed an application for DIB, alleging disability as of February 27, 2006 (Tr. 112-114). After the initial denial of the claims, Plaintiff filed a request for an administrative hearing, held on June 16, 2009 in Chicago, Illinois before Administrative Law Judge ("ALJ") Ayrie Moore (Tr. 29). Plaintiff, represented by attorney Mikel Lupisella, testified by teleconference from Flint, Michigan (Tr. 33-47). Vocational Expert ("VE") Michelle Peters also testified (Tr. 47-52). On July 20, 2009, ALJ Moore found Plaintiff not disabled (Tr. 27-28). On June 16, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on August 20, 2010.

## BACKGROUND FACTS

Plaintiff, born August 5, 1959, was 49 at the time of the administrative decision (Tr. 112). She completed one year of college and worked previously as a maintenance administrator (Tr. 132, 139). Her application for benefits alleges disability as a result of chronic pain and fatigue (Tr. 131).

### A.    Plaintiff's Testimony

Prior to Plaintiff's testimony, her attorney noted that his client was seeking benefits for a closed period starting on February 27, 2006 and ending March 5, 2007 (Tr. 32). Plaintiff began her testimony by stating that she lived with her husband and teenage daughter in a one level house (Tr. 33-34). Plaintiff, right-handed, testified that she held a current driver's license (Tr. 34).

Plaintiff testified that she was a maintenance administrator before the onset of disability, adding that she worked for the same company for 28 years prior to February, 2006 (Tr. 37). She alleged that joint pain, concentrational problems, and headaches obliged her to stop working (Tr. 35-36). She reported that her care providers included a neurologist, rheumatologist, and podiatrist (Tr. 36-37). She indicated that during the alleged disability period she underwent physical therapy, occupational therapy, and aquatherapy (Tr. 38). She denied surgeries for the relevant period, but reported that she had sought emergency treatment for joint pain (Tr. 39). She reported that she was taking Neurontin, Flexeril, and Vicodin, adding that she had received steroid injections to the neck and feet (Tr. 39-40). She alleged that her medication created the side effect of drowsiness (Tr. 40). She indicated that she attempted to alleviate joint pain with aquatherapy and taking naps (Tr. 41).

Plaintiff denied the ability to lift more than ten pounds, sit for more than 30 minutes, or stand or walk for more than 30 (Tr. 41). She alleged limitations in reaching overhead, but reported that she could hold a telephone (Tr. 41). She alleged grip limitations, trouble reaching backwards, and concentrational problems as a result of pain (Tr. 42). She denied problems getting along with

coworkers, bosses, and friends (Tr. 43). She reported that upon returning to work, her treating

sources had recommended work with a sit/stand option (Tr. 43). She alleged that over the course

of the disability period, she performed only limited household and shopping chores (Tr. 45). She

denied reading, computer activity, or visiting friends during the relevant period but admitted to

walking "a little" (Tr. 46).

### B.   Medical Evidence

#### 1.  Treating Sources[1]

March, 2005 imaging studies of the abdomen were normal (Tr. 292). August, 2005 imaging

studies of the cervical and lumbar spines were also unremarkable (Tr. 275, 277). A bone scan of the

lower extremities was normal (Tr. 276). In September, 2005, Vladimir Ognenovski, M.D. renewed

---

[1] The Appeals Council order indicates that transcript pages 469-530 (Exhibit 26F) were submitted subsequent to the July 20, 2009 administrative decision (Tr. 4). Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Plaintiff does not request a Sentence Six remand. Any issue not raised directly by Plaintiff is deemed waived. *United States v. Campbell,* 279 F.3d 392, 401 (6th Cir.2002). Even assuming for the sake of argument that Plaintiff had raised this issue, reliance on the later submissions would be unavailing. A number of the "new" records are essentially duplicative of earlier submitted records. Another category of records are "new," but refer to Plaintiff's condition well before the closed period of February 27, 2006 to March 5, 2007 and are *per se* immaterial. Aside from the fact that the newer records would be unlikely to change the ALJ's decision, Plaintiff has not provided "good cause" (as required §405(g)) for the tardy submission of this material.

Plaintiff's prescription for physical therapy, noting complaints of joint pain (Tr. 321). He observed

that Plaintiff walked with a cane, but was in "no apparent distress" (Tr. 321). In January, 2006,

Derek R. Tesoro, D.P.M. diagnosed Plaintiff with arthritis of the foot as well as a right heel spur and

plantar fasciitis of both feet (Tr. 170). The following month, Plaintiff reported foot improvement

as a result of injections, taping, and stretching, but reported increased hand pain (Tr. 168, 319). Also

in January, 2006, Carlos O. Diola, M.D. observed a full range of motion despite a diagnosis of

osteoarthritis (Tr. 182).

In March, 2006, Mukesh Lathia, M.D. performed a psychiatric evaluation,  noting that

Plaintiff reported depression, low motivation, and low energy, but denied suicidal ideation (Tr. 172).

Plaintiff also alleged sleeping problems, body pains, and manipulative limitations as a result of

arthritis (Tr. 172). On March 6, 2006 Dr. Lathia assigned Plaintiff a GAF of 40, noting an

"extremely guarded" prognosis[2] (Tr. 174). Counseling notes from the same month state that Plaintiff

appeared depressed and hypoactive but was oriented with normal thinking (Tr. 357). She was

assigned a GAF of 58[3] (Tr. 345).

The same month, rheumatologist Gary Brooks, M.D. examined Plaintiff, noting that recent

imaging studies had been unremarkable (Tr. 227, 264, 446). The following month, Dr. Brooks noted

"no objective evidence of any organic, musculoskeletal, or neurologic causes of [Plaintiff's]

---

[2] A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

[3] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*), 30 (4th ed.2000).

symptoms" (Tr. 226).  She demonstrated a full range of wrist, elbow, and shoulder motion (Tr. 226).

Plaintiff reported that physical therapy and aquatherapy had relieved some of her symptoms (Tr.

225).

Also in April, 2006, Dr. Diola observed swollen hands but no evidence of rheumatoid

arthritis (Tr. 178-179).  The same month, Plaintiff reported improvement after undergoing physical

therapy (Tr. 205).  In June, 2006, a CT of the left shoulder was unremarkable (Tr. 255).  Dr.

Ognbenovski opined that she would not be able to return to work (Tr. 313).  In August, 2006,

Plaintiff again complained of discomfort as a result of plantar fasciitis (Tr. 211).  September, 2006,

imaging studies of the knees were unremarkable (Tr. 220-221, 296).  An MRI of the cervical spine

showed "early degenerative disk disease at C5-6 but otherwise normal results (Tr. 219, 297).

Counseling notes from the same month state that Plaintiff remained depressed (Tr. 351).

In October, 2006, Dr. Ognenovski noted that Plaintiff's objective medical tests had been

mostly negative, remarking that he had "not been able to explain her symptoms by any other

musculoskeletal disorder" than fibromyalgia (Tr. 306).   Dr. Lathia found that Plaintiff was still

depressed (Tr. 398).  He opined that she was totally disabled, stating that he supported "her

application for medical disability retirement" (Tr. 304, 307).  Counseling notes state that Plaintiff's

progress had been "minimal" (Tr. 350).   December,  2006 physical therapy records showed slow

progress (Tr. 427).  Plaintiff was advised to continue strengthening exercises (Tr. 427).

In January, 2007, neurologist Mark Adams administered steroid injections, noting that

imaging studies did not establish Plaintiff's source of pain (Tr. 387).  A CT of the cervical spine was

essentially normal (Tr. 389, 403).  The same month, orthopedic surgeon Danielle C. Duncan, M.D.

advised Plaintiff to lose weight and continue strengthening exercises to reduce stress on her knees

(Tr. 419).

The following month, Dr. Lathia found that Plaintiff's psychological prognosis was "extremely guarded" (Tr. 392). Dr. Lathia's treating notes state that Plaintiff resumed work at the end of February or beginning of March, 2007 (Tr. 416). Treating notes created between April, 2007 and June, 2008 indicate that Plaintiff continued to work, but complained of fatigue (Tr. 404-415). In June, 2008, Dr. Lathia, noted that Plaintiff was within months of retirement, stating that she was "hanging [in] there" (Tr. 404). In June, 2009, counselor Gerald Maki found that Plaintiff experienced marked limitations in the ability to withstand workplace stress for the period of February 24, 2006 to March 4, 2007, but experienced otherwise mild limitations (Tr. 435).

## 2. Consultive or Non-Examining Sources

In December, 2006, Muhammad Ahmed, M.D. performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA (Tr. 362-368). He found that Plaintiff could lift 20 pounds occasionally and 10 frequently; stand/walk for at least two hours a day and sit for six; and push and pull without limitation (Tr. 362). Plaintiff was limited to occasional climbing, balancing stooping, kneeling, crouching, and crawling (Tr. 363). The Assessment found the absence of manipulative, visual or communicative limitations (Tr. 364-365). Plaintiff's environmental limitations consisted of avoiding concentrated exposure to either vibration or hazards (Tr. 365). Dr. Ahmed found that Plaintiff's claims were "partially credible" (Tr. 366).

In January, 2007, a Psychiatric Review Technique by Ron Marshall, Ph.D. found the presence of an affective disorder (Tr. 369, 372). Plaintiff was deemed moderately limited in the ability to maintain "concentration, persistence, or pace" but experienced otherwise mild restrictions (Tr. 379). Dr. Marshall found that Plaintiff was capable of "rote tasks on a sustain[ed] basis" (Tr. 381). He also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff's ability understand, remember, and carry out detailed instructions was moderately limited (Tr. 383).

-6-

Her ability to maintain attention for extended periods, maintain regular attendance, complete a normal workweek without psychologically based interruptions, and respond appropriately to workplace changes was also deemed moderately limited (Tr. 384).

### C.    Vocational Expert Testimony

VE Peters classified Plaintiff's past relevant work ("PRW") as a maintenance administrator (log clerk) as semi-skilled at the sedentary exertional level[4] (Tr. 49).  She found that transferrable skills existed from the PRW (Tr. 49).  She testified that if Plaintiff were limited to "light lifting," standing for only two hours a day, the need for "a handheld device for ambulation," occasional postural activities, and  routine tasks reflecting moderate concentrational deficits, she would be unable to return to her PRW but could perform the sedentary, unskilled work of a clerk (5,000 positions within the state of Michigan); information clerk (6,000); and sorter (2,800) (Tr. 52).

In response to questioning by Plaintiff's attorney, the VE testified that if Plaintiff required unscheduled breaks and experienced concentrational problems for more than 20 percent of the workday, all gainful employment would be precluded (Tr. 52-53).  The VE stated that in addition to her professional experience, her testimony was based on the information found in the *Dictionary of Occupational Titles* ("DOT"), the *Department of Labor Employment Quarterly Statistics*, and the *Department of Labor of Michigan Statistics* (Tr. 48).

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

D.      **The ALJ's Decision**

Citing Plaintiff's medical records, ALJ Moore found that from February 27, 2006 through March 4, 2007, Plaintiff experienced the "severe" impairments of "degenerative disc disease in the cervical spine, degenerative joint disease in the lumbar spine, carpal tunnel syndrome, fibromyalgia, right heel spur, bilateral planter faciitis, and depression" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16-17).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following additional limitations:

> [T]he claimant can stand for only two hours, needs the assistance of a hand-held device, and may only occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant must also avoid concentrated exposure to vibrating tools and work hazards and would be unable to . . . perform more than routine work tasks on a sustained basis

(Tr. 20).

Citing the VE's job findings above, the ALJ determined that Plaintiff could perform the jobs of order clerk, information clerk, and sorter (Tr. 28).

The ALJ discounted Plaintiff's allegations of disability to the extent that they were inconsistent with the above RFC, noting that Plaintiff's physical problems were somewhat responsive to physical and aquatherapy (Tr. 21-23).  She also noted that imaging studies were either unremarkable or showed only "mild" abnormalities (Tr. 23).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate

-8-

to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).   In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-9-

## ANALYSIS

### The Residual Functional Capacity

Plaintiff argues that the residual functional capacity ("RFC") found in the administrative opinion did not account for her full degree of impairment. *Plaintiff's Brief* at 6-9, *Docket #11* (*citing* Tr. 20). She contends that the ALJ erred by failing to consider all of the evidence supporting a finding of disability. *Id.*

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. *See* 20 C.F.R. § 404.1545(a) (RFC must be based on all relevant evidence).

Contrary to Plaintiff's claim, substantial evidence supports the RFC found in the administrative opinion. The ALJ observed that imaging studies did not support Plaintiff's professed level of limitation (Tr. 22-24). To the extent that imaging studies would arguably not reflect limitations brought on by fibromyalgia, the ALJ adopted Plaintiff's allegations that joint pain and depression created concentrational problems by limiting her to unskilled "rote" work (Tr. 20). The ALJ also cited treating source material at length, noting that both foot and joint problems had been addressed with non-surgical treatment (Tr. 21). She pointed out that Plaintiff acknowledged some degree of relief from conservative modalities (Tr. 25).

As to psychological limitations, the ALJ supported her findings by citing Plaintiff's husband who stated that his wife continued to interact with others on a regular basis and was capable of handling stress (Tr. 18). While the ALJ declined to accept all of Plaintiff's alleged limitations,

-10-

Plaintiff has failed to point out any substantive or procedural error in the credibility determination. *See* SSR 96-7p.   Likewise, because the administrative opinion contains a thorough analysis of the treating records, the argument that evidence favoring disability was overlooked or improperly discounted is unavailing.

Finally, Plaintiff argues that the fact that she resumed work on March 5, 2007 should not be used to discount her allegations of disability for the closed period, asserting that "as soon as she was better and medically cleared, low and behold," she returned to work.  *Plaintiff's Brief* at 9. However, her psychological treating notes from February and March, 2007 do not suggest that Plaintiff returned to work because her condition improved (indeed, these records show that Plaintiff did *not* believe that her condition had improved) but because her short term disability ended on February 27, 2007 and her failure to resume work after that date would have resulted in termination (Tr. 416-417).  The fact that Plaintiff was able to resume her former position on the date required to avoid termination (and continue to work until December, 2008) supports the ALJ's conclusion that she was not precluded from all work during the closed period.

Because the ALJ's findings were well supported and well explained, the administrative findings should not be disturbed.  While I caution that my recommendation should not be read to trivialize Plaintiff's conditions or personal problems, the ALJ's determination, well within the "zone of choice" accorded the administrative fact-finder, should remain undisturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

-11-

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 29, 2011

_____

**CERTIFICATE OF SERVICE**

I hereby certify on July 29, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 29, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217

-12-