UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNA M. PATTON,

        Plaintiff,

v.                                                        Case No. 10-13314
                                                      Honorable Julian Abele Cook, Jr.

COMMISSIONER OF
SOCIAL SECURITY

        Defendant.

## ORDER

This case is based on a complaint by the Plaintiff, Anna M. Patton, who, in acting upon the authority of 42 U.S.C. § 402(g), has asked this Court to overturn an adverse decision by the Defendant, the Commissioner of the Social Security Administration ("Commissioner"). The parties have now filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, both of which were forwarded by the Court to Magistrate Judge R. Steven Whalen for his evaluation. In a report on July 29, 2011, he recommended to this Court that (1) the Commissioner's motion for summary judgment be granted, and (2) Patton's dispositive motion be denied.  As of this date, neither party has expressed any objections to the magistrate judge's report.

For the reasons that have been set forth below, this Court adopts the report, including the recommendations of Magistrate Judge Whalen, in its entirety.

I.

On August 31, 2006, Patton filed an application for disability insurance benefits, in which she alleged a disability that began on February 27, 2006. In her disability application, Patton claimed that she had a limited ability to work because of a variety of severe medical issues (to wit, fibromyalgia, arthritis, temporomandibular joint pain, swelling of soft tissue, depression, sleep apnea, plantar fasciitis, heal spurs, and osteoarthritis in her feet). She later amended her claim, seeking benefits only for the closed period of February 27, 2006, through March 4, 2007. As of the date of the alleged onset of her disability, she was forty-six years old, having finished high school and acquired one year of a college education. Patton reports her past relevant work experience as a maintenance administrator where she worked for the same employer for twenty-eight years.

When her application was denied, Patton sought and obtained a *de novo* hearing before an administrative law judge who, in rendering a decision on July 20, 2009, determined that she was not a disabled person within the meaning of the Social Security Act. It was the conclusion of this administrative law judge that Patton, despite having suffered from several severe impairments - to wit, degenerative disc disease in the cervical spine, degenerative joint disease in the lumbar spine, carpal tunnel syndrome, fibromyalgia, right heel spur, bilateral plantar faciitis, and depression - did not have an impairment or a combination of impairments that met or equaled the "Listing of Impairments." The administrative law judge also concluded that Patton possessed the residual functional capacity to perform sedentary work subject to the following additional limitations; namely, she (1) may stand for only two hours; (2) needs the assistance of a hand-held device (i.e., a cane); (3) should only occasionally climb, balance, stoop, kneel, crouch, and crawl; (4) must avoid concentrated exposure to vibrating tools and work hazards; and (5) is unable to perform more than routine work tasks on a sustained basis.

The application of these restrictions had the practical effect of precluding her from performing past relevant work as a maintenance administrator. Finally and based upon the testimony of a vocational expert, the administrative law judge opined that, when consideration is given to this residual functional capacity and such other significant factors as age, education, and work experience, Patton was able to perform a significant number of jobs that are available in the national economy. Therefore, the administrative law judge concluded that Patton was not suffering from any disability which is compensable under the Social Security Act. This decision became the final decision of the Commissioner on June 16, 2010, when the Appeals Council denied Patton's request for a review. This lawsuit followed.

II.

This Court has jurisdiction to review the Commissioner's final decisions to determine if (1) the findings are supported by substantial evidence and (2) the correct legal standards were applied. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted), and is "more than a scintilla of evidence but less than a preponderance," *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the evidence could also support a different conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). This review is limited in scope to an examination of the record only. Thus, the court "does not review the evidence *de novo*, make credibility determinations nor weigh the evidence." *Brainard*, 889 F.2d at 681.

III.

In her appeal, Patton urges the Court to conclude that the decision by the administrative law judge was erroneous because, when her residual functional capacity was assessed, the pertinent facts and medical evidence were not properly evaluated in accordance with SSR 96-8p.[1] The Commissioner disagrees, arguing that there is substantial evidence in the record to support the administrative law judge's finding on this issue.

Patton argues that she "had a combination of impairments that required multiple, continuous bouts of aqua, physical and occupational therapy and other medical management, i.e. doctor appointments, that kept her unable to work for just over twelve consecutive months." (Pl.'s Br. at 9). It is unclear to the Court whether Patton means that she was rendered unable to work due to the therapy regimen itself - in terms of its frequency, duration, and disruption to her routine - or, as the Commissioner and Magistrate Judge Whalen interpreted her argument, due to the underlying conditions for which she was seeking such treatment. Out of an abundance of caution, the Court will consider both arguments.

Patton correctly notes that a residual functional capacity evaluation is an assessment of a claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," where a "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Patton points to her testimony from the administrative hearing in which she described her therapy and other appointments as taking up essentially all of her time: "So I was always in a therapy. In between that I was doing the shots and then between that, going back and forth to the doctors. Most of my days was pretty much filled out.

---

[1] SSR 96-8p provides that the "[residual functional capacity] assessment must be based on *all* of the relevant evidence in the case record," including, *inter alia*, the "effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."

A lot of times when I got done I did a lot of sleeping." (Tr. 44).

Patton's medical records do support her contention that she sought various forms of therapy from several providers over the course of the year. However, these regimens were not concurrent. Rather, her discharge summaries show that she underwent the following courses of therapy: (1) fourteen physical therapy sessions with Back in Motion Rehabilitation, LLC between March 2nd and April 3rd in 2006; (2) twelve aquatherapy sessions with Covenant Healthcare between April 21st and May 23rd in 2006; (3) an unspecified number of occupational therapy sessions with Covenant Healthcare between June 6th and July 18th in 2006; (4) twelve physical therapy sessions with Covenant Healthcare between June 19th and July 19th in 2006; and (5) thirty-one physical therapy sessions with Michigan Spine Care between October 24, 2006, and January 18, 2007.[2] Aside from a short period between June 19th and July 18th of 2006, she received either no therapy or one form of therapy at any given time. When Patton did receive therapy, she averaged two to three sessions each week. The treatment notes from Back in Motion Rehabilitation indicate that her sessions generally lasted between thirty minutes and one hour.[3] While the Court does not intend to trivialize Patton's conditions or the disruption that her treatments may have caused her, it does not appear that the time required for her various courses of therapy was sufficient - standing alone - to have precluded her from working on a regular and a continuing basis. Moreover, the administrative law judge determined that her claimed need for daily naps was "inconsistent with her treatment records, in which numerous physicians suggested [that she] undergo strength training, regimens of exercise, and generally move around as much as possible." (Tr. 25). Based upon a thorough review

---

[2] The record also indicates that, at times, Patton was not compliant with her therapy regimen and refused to take the medicines that her physicians had recommended.

[3] The treatment notes from the other facilities do not contain any indication of the length of the sessions.

of all relevant evidence, the administrative law judge adopted the State Disability Determination Service medical consultant's opinion that Patton could stand and/or walk at least two hours and sit for about six hours in an eight-hour workday. Because this determination was supported by substantial evidence, the Court must reject the first formulation of Patton's argument.

As for the second formulation of this argument, the administrative law judge determined, upon review of the entire record, that Patton's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21). As required by SSR 96-7p, and as detailed by Magistrate Judge Whalen, the administrative law judge outlined multiple, specific examples of the failure of the objective medical evidence to substantiate Patton's claims regarding the limiting effects of her symptoms. SSR 96-7p (credibility finding must be based upon the entire case record, and must be "sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight"); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (citation and internal quotation marks omitted) ("Since the [administrative law judge] has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference."); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Moreover, to the extent that the administrative law judge found these claims to be credible, she properly accounted for them (1) in her determination of Patton's residual functional capacity and in the assignment of additional limitations where appropriate, and (2) when formulating the hypothetical question to be submitted to the vocational expert. *See Smith v. Halter*, 307 F.3d 377,

378 (6th Cir. 2001) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."); *Casey*, 987 F.2d at 1235 (in formulation of hypothetical question, the administrative law judge "is required to incorporate only those limitations accepted as credible by the finder of fact").

Therefore, the determination by the administrative law judge that Patton could perform a significant number of jobs based on the vocational expert's response to the hypothetical question is supported by substantial evidence. Hence, Patton's argument to the contrary must be rejected.

IV.

For the reasons that have been outlined above, the Court adopts the report of Magistrate Judge Whalen in its entirety. Accordingly, (1) the Commissioner's motion for summary judgment is granted, and (2) Patton's motion for summary judgment is denied.

IT IS SO ORDERED.

Date: September 30, 2011　　　　　　　　　　　　　　s/Julian Abele Cook, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2011

s/ Kay Doaks<br>
Case Manager